MATTHEW D. POWERS (Bar No. 104795)
matthew.powers@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

ELIZABETH STOTLAND WEISWASSER
(New York Bar No. EW-0736 – *Pro Hac Vice*)
elizabeth.weiswasser@weil.com
JENNIFER H. WU
(New York Bar No. JW-1201 – *Pro Hac Vice*)
jennifer.wu@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant
MEDICIS PHARMACEUTICAL CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPAX LABORATORIES, INC., | Case No. C08-00253 MMC |
| Plaintiff, | **MEDICIS' MOTION TO DISMISS** |
| v. | Date: April 11, 2008 |
| MEDICIS PHARMACEUTICAL CORP., | Time: 9:00 a.m. |
| | Ctrm: #7, 19th Floor |
| Defendant. | The Honorable Maxine M. Chesney |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 11, 2008 at 9:00 a.m. or as soon thereafter as counsel may be heard in the above Court, Defendant Medicis Pharmaceutical Corp. ("Medicis") will and hereby does move this Court to dismiss the declaratory judgment complaint of Plaintiff IMPAX Laboratories, Inc. ("IMPAX"). This motion is based upon the memorandum below, the accompanying declarations in support of the motion, the proposed order, the complete record of this action, evidence and argument presented at the hearing on this motion, and all matters of which the Court may take judicial notice.

## RELIEF REQUESTED

Medicis respectfully seeks an Order dismissing IMPAX's declaratory judgment complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. In the alternative, Medicis requests that this Court exercise its discretion to decline declaratory judgment jurisdiction.

## I.
## INTRODUCTION

This declaratory judgment action by IMPAX is a premature and impermissible effort to obtain an advisory opinion from this Court on the validity and infringement of a patent owned by Medicis where IMPAX does not have regulatory authorization to commercially market its product, and where Medicis has not used its patent to cause IMPAX injury. IMPAX's declaratory judgment complaint asserts that IMPAX has filed an Abbreviated New Drug Application ("ANDA") seeking approval from the Food and Drug Administration ("FDA") to commercially manufacture and sell a generic copy of Medicis' proprietary acne drug, Solodyn®, and that IMPAX is entitled to a declaration that Medicis' patent directed to Solodyn® (U.S. Patent No. 5,908,838 ("the '838 patent")) is not valid or infringed.

But IMPAX's ANDA has not been approved by the FDA, and IMPAX is thus not allowed to sell its generic drug. Moreover, unlike the typical ANDA situation, Medicis has no ability to obtain a statutory stay on FDA approval. Without such approval, any injury that IMPAX might suffer under Medicis' patent is purely hypothetical, and IMPAX lacks standing to

1    bring this suit.  In <u>MedImmune v. Genentech, Inc.</u>, 127 S.Ct. 764, 771 (2007), the Supreme Court

2    held that a justiciable Article III controversy is required to establish declaratory judgment

3    jurisdiction.  A justiciable Article III controversy exists only if IMPAX has suffered "actual or

4    imminent injury caused by the defendant [Medicis] that can be redressed by judicial relief and

5    that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' "

6    <u>Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.</u>, 482 F.3d 1330, 1338 (Fed. Cir. 2007).  Because

7    IMPAX's complaint fails on its face to show such a justiciable controversy, it should be

8    dismissed.  And, in the alternative, public policy and the totality of circumstances centered around

9    the hypothetical nature of this dispute counsel strongly in favor of this Court exercising its

10   discretion to decline jurisdiction.

11                                      **II.**

12                          **STATEMENT OF FACTS**

    A.      **Medicis Cannot Obtain Any Stay on FDA Approval**

13           The statutory backdrop of this case is the "Hatch-Waxman Act," formally entitled

14   The Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98

15   Stat. 1585 (1984) (codified at 21 U.S.C. § 355 and 35 U.S.C. §§ 156, 271(e)).  This Act governs

16   the approval of new and generic drugs and is designed to promote the dual incentives of

17   encouraging innovator companies such as Medicis to develop new drugs, while permitting

18   generic companies such as IMPAX to incur less costs in bringing their drugs to market.  <u>See</u>

19   <u>Andrx Pharm., Inc. v. Biovail Corp.</u>, 276 F.3d 1368, 1371 (Fed. Cir. 2002).  The Act thus permits

20   generic companies through the filing of an ANDA (an "abbreviated" new drug application) to rely

21   on the safety and effectiveness data of the innovator product by simply showing that their product

22   is "bioequivalent" to the innovator product, rather than going through the costly exercise of

23   developing their own data.  In exchange for such benefits, the Act provides specific protections

24   for the patent rights of innovator companies and specific mechanisms that ensure the ability of

25   drug patent holders to protect their rights.  <u>See</u> 21 U.S.C. § 355(j).

26           These patent protections are triggered by what is known as a "paragraph IV

27   certification."  A paragraph IV certification arises from the statutory requirement that new drug

28   developers list patents related to their new drugs in the FDA's "Orange Book," formally titled

1    "Approved Drug Products with Therapeutic Equivalence Evaluations." 21 U.S.C. § 355(b)(1).

2    This Orange Book listing requires any generic company that files an ANDA to make one of four

3    "certifications" as to each listed patent.  A "paragraph IV certification" is required by the ANDA

4    filer where the ANDA filer asserts that it should be permitted to market its generic drug before

5    the patent expires because it believes that the listed patent is invalid and/or will not be infringed.

6    See 21 U.S.C. § 355(j)(2)(A)(I)-(IV).  Where a paragraph IV certification is made, the ANDA

7    filer is required to provide notice of it to the patent owner along with a detailed explanation of the

8    factual and legal bases for the applicant's opinion that the patent is invalid or will not be

9    infringed.  21 U.S.C. § 355(j)(2)(B).

10           Upon receiving such a paragraph IV certification, the patent owner has an

11   exclusive 45-day period in which to determine whether and where to file a suit for patent

12   infringement against the ANDA filer.  21 U.S.C. § 355(j)(5)(C).  The result of commencing such

13   a suit within the 45-day period is that the FDA is automatically precluded from approving the

14   generic company's ANDA for a period of 30 months, or until the patent infringement litigation

15   has been resolved.  21 U.S.C. § 355(j)(5)(B)(iii).  The effect of this "30-month stay" is to ensure

16   that there will be no commercial manufacturing or selling of the generic product while the patent

17   litigation is ongoing (up to 30 months).  However, if the patentee or NDA holder does not bring

18   an infringement suit within 45 days after receiving notice of a paragraph IV certification, the

19   Hatch-Waxman Act provides that the ANDA applicant may bring a declaratory judgment action

20   seeking a declaration that the patent at issue is invalid or will not be infringed by the generic drug

21   for which the ANDA was submitted.  21 U.S.C. § 355(j)(5)(C); 35 U.S.C. § 271(e)(5) (federal

22   courts "shall, to the extent consistent with the Constitution, have subject matter jurisdiction" over

23   declaratory judgment actions in paragraph IV ANDA cases).

24           None of these paragraph IV patent protections are available for Medicis' Solodyn®

25   product, however, as Solodyn® is one of a relatively very small number of drugs to which the

26   paragraph IV certification requirements do not apply.  That is because Solodyn® contains an

27   antibiotic ingredient that was part of a drug that was originally (and required to be) approved

28   under 21 U.S.C. § 357, a now-repealed provision of the Federal Food, Drug, and Cosmetic Act

relating to antibiotics.  Drug manufacturers such as Medicis who utilize such antibiotic

ingredients are not permitted, under FDA's interpretation of the law, to list relevant patents in the

Orange Book.  See P.L. 105-115 (1997), Section 125(d)(2).  ANDA applicants for such products

(such as IMPAX) are accordingly not required to comply with the typical paragraph IV

certification requirements, and the innovator is not entitled to the statutory protections that would

otherwise arise from such certifications.

The result of this anomalous situation is that Medicis was not permitted to list its

Solodyn® '838 patent in the Orange Book, and IMPAX was not required to file a paragraph IV

certification as to the '838 patent in its ANDA.  And because there was no paragraph IV

certification, Medicis cannot obtain the typical 30-month stay on approval of IMPAX's ANDA.

Instead, the FDA can approve IMPAX's ANDA as soon as it otherwise determines that the

regulatory requirements have been satisfied.  Although, significantly, that has not happened.

### B.    IMPAX's Premature Declaratory Judgment Complaint

Medicis first learned of IMPAX's ANDA filing in January 2008 when Medicis

first reviewed a letter from IMPAX advising Medicis that it had filed an ANDA for a generic

version of Solodyn®, asserting the invalidity and noninfringement of the '838 patent, and

requesting a covenant from Medicis not to sue IMPAX for infringement.[1]  Wu Decl. Ex. 1 (Dec.

20, 2007, Ltr. from R. Chin to J. Shacknai).  Medicis responded to IMPAX that in view of the

holidays it had only just received the letter and would provide a substantive response within two

weeks.  Wu Decl. Ex. 2 (Jan. 11, 2008, Ltr. from S. Rodner to R. Chin).  Rather than wait for the

promised response, however, IMPAX filed this lawsuit four days later.

IMPAX does not allege any cognizable injury in its complaint, and asserts only

that: (1) IMPAX has submitted an ANDA application to manufacture and sell generic Solodyn®,

Compl. at ¶ 7; (2) Medicis claims that the use of Solodyn® is covered by the '838 patent, generic

competitors face risk of a suit for infringement, and Medicis intends to enforce the '838 patent, id.

at ¶¶ 9-11; and (3) Medicis has not provided IMPAX with a covenant not to sue, id. at ¶ 12.

---

[1] The IMPAX letter is dated December 20, 2007.  Because of the holidays, the letter was not
reviewed at Medicis until January 2008 when Medicis sent its January 11, 2008 letter to IMPAX.
Wu Decl. Ex. 2 (Jan. 11, 2008, Ltr. from S. Rodner to R. Chin).

1    Based on these allegations, IMPAX claims that a justiciable Article III controversy exists.

2                                              **III.**

3                                          **ARGUMENT**

4    **A.    A Justiciable Article III Controversy Does Not Exist Over IMPAX's
         Premature and Preemptive Complaint**

5              The Declaratory Judgment Act provides that, "in the case of actual controversy

6    within its jurisdiction . . . any court of the United States, upon the filing of an appropriate

7    pleading, may declare the rights and other legal relations of any interested party seeking such

8    declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The

9    statutory requirement of an "'actual controversy' refers to the type of 'Cases' and 'Controversies'

10   that are justiciable under Article III." Teva, 482 F.3d at 1337. The Supreme Court held in

11   MedImmune that Article III "require[s] that the dispute be definite and concrete, touching the

12   legal relations of parties having adverse legal interests; and that it be real and substantial and

13   admit of specific relief through a decree of a conclusive character, as distinguished from an

14   opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 127

15   S.Ct. at 771 (citations omitted).

16             Under MedImmune, "all the circumstances" must demonstrate the existence of a

17   justiciable Article III controversy "of sufficient immediacy and reality to warrant the issuance of a

18   declaratory judgment." Id. "A justiciable Article III controversy requires the party instituting the

19   action to have standing and the issue presented to the court to be ripe." Teva, 482 F.3d at 1337

20   (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The constitutional

21   requirement of standing requires "[a] plaintiff [to] allege personal injury fairly traceable to the

22   defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen

23   v. Wright, 468 U.S. 737, 751 (1984). "Of the three standing requirements, injury-in-fact is the

24   most determinative: whatever else the case or controversy requirement embodies, its essence is a

25   requirement of injury in fact." Teva, 482 F.3d at 1337 (citations omitted). An injury-in-fact must

26   be 'personal,' 'concrete and particularized,' and 'actual or imminent.'" Id. (citing Lujan, 504 U.S.

27   at 560). These standing requirements are not met here.[2]

28   _____

     [2] This motion represents a facial attack that the allegations in IMPAX's complaint, even if

1      **1.     IMPAX's ANDA Does Not Confer Standing on IMPAX**

2           While an ANDA filing is a "technical" act of infringement, it cannot by itself

3  confer jurisdiction over IMPAX's complaint.  IMPAX must still satisfy the injury-in-fact standing

4  requirement of Article III, as Congress "cannot expand standing beyond the Article III

5  jurisdiction of federal courts."  Teva, 482 F.3d at 1338; see also Lujan, 504 U.S. at 576 ("ignoring

6  the concrete injury requirement" is unconstitutional).  There is no actual injury to IMPAX here

7  because it has not obtained FDA approval to market its generic drug.  Because IMPAX is not

8  engaging in any commercial manufacture or sales of its product, it is not at risk of incurring

9  damages for patent infringement.  Moreover, because there is no paragraph IV certification, there

10  can be no 30-month stay on FDA approval, and IMPAX cannot suffer any injury that might be

11  alleged to arise from such a stay.

12           The absence of jurisdictional injury is shown by Teva v. Novartis, the Federal

13  Circuit's only post-MedImmune ANDA case.  There the Federal Circuit made clear that it is not

14  the filing of an ANDA that establishes the required jurisdictional injury for purposes of sustaining

15  a declaratory judgment, but the patentee's subsequent actions in enforcing less than all of the

16  Orange Book listed patents while obtaining a 30-month stay on FDA approval on the entire

17  ANDA.  Teva, 482 F.3d at 1343, 1340, n.5 (Novartis' actions caused injury-in-fact to the generic

18  company by "placing into actual dispute the soundness of Teva's ANDA and Teva's ability to

19  secure approval of the ANDA.").  In finding the required jurisdictional injury based on the

20  uncertainty caused to the ANDA filer by the 30-month stay, the Federal Circuit specifically

21  distinguished a situation like here where there is no 30-month stay and nothing precluding market

22  entry:

23           [The patentee's] selective [infringement] suit creates uncertainty as
           to [the generic's] legal rights under its ANDA.  *Ordinarily, a*
24           *potential competitor in other fields is legally free to market its*
           *product in the face of an adversely-held patent.*  In contrast, under
25           the Hatch-Waxman Act an ANDA filer in [the generic's] situation
           is not legally free to enter the market because federal statutes

26  ────────────────────────────
   assumed to be true, are insufficient on their face to establish subject matter jurisdiction.  See Safe
27  Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the
   challenger asserts that the allegations contained in a complaint are insufficient on their face to
28  invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the
   allegations that, by themselves, would otherwise invoke federal jurisdiction.").

prohibit it [by providing a statutory stay on ANDA approval].  See 21 U.S.C § 355(j)(5)(B)(iii).

Id. at 1345 (emphasis added).  In this case there can be no 30-month stay and thus IMPAX has not suffered any injury as it remains "legally free to market its product in the face of an adversely-held patent."  Id.

The absence of jurisdiction is further underscored by the Hatch-Waxman Act's limited situation in which an ANDA filer is permitted to seek a declaratory judgment. Specifically, the Hatch-Waxman Act ensures that NDA/patent holders have the first opportunity to determine whether and where to enforce patents protecting their drugs.  See 149 Cong. Rec. S15885 (Nov. 25, 2003) (remarks of Sen. Kennedy, ranking member of Senate HELP committee; the "sole purpose of requiring the passage of 45 days is to provide the patent owner and brand-name drug company the first opportunity to begin patent litigation").  It is only when this exclusive 45-day period has expired and the patentee receiving a paragraph IV certification has not brought suit that the Hatch-Waxman Act provides the ANDA filer with the opportunity to file an action for a declaratory judgment "to obtain patent certainty."  35 U.S.C. § 271(e)(5).  This section requires that (1) a paragraph IV certification has been filed, and (2) the patentee has failed to sue the ANDA filer for patent infringement within 45 days of receiving notice of the paragraph IV certification.  Id.  Neither statutory requirement is met here.

**2.      No Other Alleged Medicis Conduct Can Create Jurisdictional Injury Here**

Beyond its filing of an ANDA, the only other allegations made by IMPAX to support its claim of jurisdiction are that Medicis has claimed that the use of Solodyn® is covered by the '838 patent, that it intends to enforce the '838 patent (Compl. at ¶¶ 9-11), and that Medicis did not provide IMPAX with a covenant not to sue under the '838 patent.  Id. at ¶ 12.  These circumstances cannot confer jurisdictional standing.

Medicis has not engaged in any acts of aggression that have caused injury to IMPAX.  Any statements by Medicis that it intends to defend its patent cannot create the required jurisdictional injury.  In Bridgelux, Inc. v. Cree, Inc., for example, this Court rejected such an argument and dismissed a declaratory judgment complaint, concluding that the patent holder's

1    press releases were not sufficiently "definite and concrete" to warrant a conclusion that

2    defendants had inflicted an "actual and imminent injury" on Bridgelux.  Wu Decl. Ex. 3 at *9

3    (Bridgelux, Inc. v. Cree, Inc., No. C 06-6495 PJH, 2007 WL 2022024 (N.D. Cal. July 9, 2007)).

4    "The fact that Cree stated publicly in press releases or at industry meetings that it would defend

5    its patents is unremarkable.  The same could be said of many patent-holders."  Id.

6           Neither can Medicis' marking of Solodyn® with the '838 patent nor its alleged

7    refusal to provide IMPAX with a covenant not to sue establish the required actual and imminent

8    injury.  It simply cannot be the case that marking a product with a patent and not providing any

9    demanding party with a covenant not to sue on that patent are sufficient to force the patentee to

10   defend, and a court to adjudicate, hypothetical questions of patent validity and infringement.  Any

11   other result would permit any apprehensive manufacturer to force courts to issue advisory

12   opinions, and subject patentees to unfair harassment.  While a particular manufacturer may wish

13   to mitigate its future risk, such a generalized interest in invalidating patents cannot constitute the

14   require actual and concrete injury for establishing standing.

15          This is exemplified in Prasco v. Medicis, where the district court dismissed a

16   declaratory judgment complaint in similar circumstances and held that even if "the marking of

17   products with the patents-in-suit were analogous to a listing of patents in the Orange Book, the

18   court in Teva was clear that this conduct alone is not sufficient to establish an Article III

19   controversy."  Wu Decl. Ex. 4 at *3.  (Prasco v. Medicis, No. 1:06cv313, 2007 WL 1974951

20   (S.D. Ohio July 3, 2007)).  The court further concluded that "Medicis' refusal [to] grant a

21   covenant not to sue holds little weight under the circumstances."  Id. at *3.  The same conclusions

22   are compelled here.

23          The Supreme Court's decision in MedImmune is consistent with this result.  In

24   MedImmune, the party seeking declaratory relief was able to prevent injury only by complying

25   with a demand from the defendant.  127 S. Ct. at 777.  The Supreme Court held that a plaintiff

26   was permitted to seek a declaratory judgment that it was not infringing a patent at the same time

27   that it was forestalling a potentially devastating infringement action by paying royalties to the

28   patent holder.  Id.   Unlike the defendant in MedImmune, Medicis has not asked IMPAX to

1  comply with any demands. IMPAX is not making any payments to Medicis or taking any other

2  actions at Medicis' behest. Nor has Medicis forced IMPAX to forbear from any desired activity

3  in order to avoid liability. Rather, IMPAX is refraining from marketing a generic form of

4  Solodyn®, not because of any actions by Medicis, but because FDA has not approved its ANDA.

5  There is no justiciable Article III controversy in these circumstances, and the Court should

6  accordingly dismiss IMPAX's complaint.

7       **B.**      **In the Alternative, This Court Should Exercise its Discretion to Decline Declaratory Judgment Jurisdiction**

8         The Declaratory Judgment Act confers discretion on courts to decline to exercise

9  jurisdiction by providing that judges "*may*" declare the rights and other legal relations of any

10  interested party, not that they *must* do so. <u>See</u> 28 U.S.C. § 2201(a) (emphasis added). "This text

11  has long been understood to confer on federal courts unique and substantial discretion in deciding

12  whether to declare the rights of litigants." <u>MedImmune</u>, 127 S. Ct. at 776-77. It is the district

13  courts which should be vested with this discretion in the first instance "because facts bearing on

14  the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are

15  peculiarly within their grasp." <u>Id.</u> at 776 (citing <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 289

16  (1995)). Therefore, even if there is an otherwise justiciable controversy, this Court has the

17  discretion to decline declaratory judgment jurisdiction. <u>Public Svc. Comm'n v. Wycoff Co.</u>, 344

18  U.S. 237 (1952); <u>see</u> <u>MedImmune</u> ("We leave the equitable, prudential, and policy arguments in

19  favor of such a discretionary dismissal for the lower courts' consideration on remand.").

20         The purposes of the Declaratory Judgment Act and the principles of sound judicial

21  administration counsel against exercising jurisdiction here. As discussed above, IMPAX does not

22  have regulatory approval to sell its drug, and Medicis has done nothing with its '838 patent to

23  cause any actual or imminent injury to IMPAX. In addition, rather than provide Medicis with a

24  meaningful opportunity to respond to its letter advising of the ANDA, as Medicis requested,

25  IMPAX filed this preemptive strike. Allowing IMPAX to proceed in these circumstances would

26  frustrate the Hatch-Waxman Act's purpose of ensuring that the patent holder has the first

27  opportunity to determine whether and where to enforce its patent rights, and permitting a

28

1   declaratory judgment claim by the generic company only after that exclusive period has expired.

2   IMPAX has entirely failed to respect that framework here.  While IMPAX has taken advantage of

3   the Hatch-Waxman Act by seeking to piggyback on Medicis' safety and effectiveness data

4   through the filing of its ANDA, it has sought to avoid the patent protections of the Act by racing

5   to the courthouse with this preemptive and premature declaratory judgment action.

6                Allowing IMPAX's declaratory judgment claim to proceed would thereby frustrate

7   Congress's carefully engineered balance of the Hatch-Waxman Act and effectively recognize

8   declaratory judgment jurisdiction based on no more than the filing of an ANDA and the existence

9   of a patent covering the drug.  Such a result would not only be bad policy by flooding the courts

10  with requests for advisory opinions, it would be unconstitutional by violating the Article III

11  requirements as set forth in <u>MedImmune</u>.  For these reasons, principles of judicial economy and

12  fairness weigh strongly in favor of declining to exercise declaratory judgment jurisdiction here.

13  <u>See, e.g.</u>, <u>Telectronics Pacing Sys., Inc. v. Ventritex, Inc.</u>, 982 F.2d 1520, 1527 (Fed. Cir. 1992)

14  (affirming district court's discretionary decision not to exercise declaratory judgment jurisdiction

15  over patent claims where FDA had not approved product); <u>Intermedics, Inc. v. Ventritex, Inc.</u>,

16  775 F. Supp. 1269, 1289-90 (N.D. Cal. 1991) (same), <u>aff'd</u> 991 F.2d 808 (Fed. Cir. Feb. 22, 1993)

17  (affirming dismissal; "at the time Intermedics filed its complaint, Ventritex could not have

18  attempted to sell the Cadence in the general commercial market because the FDA had yet to grant

19  premarket approval of the device"); <u>Fresenius USA, Inc. v. Transonic Sys., Inc.</u>, 207 F. Supp. 2d

20  1009, 1012 (N.D. Cal. 2001) (exercising discretion not to exercise declaratory judgment

21  jurisdiction over patent claims); <u>Amgen, Inc. v. Hoechst Marion Roussel, Inc.</u>, 3 F. Supp. 2d 104,

22  111-13 (D. Mass. 1998) (same).

### III.
### CONCLUSION

For the foregoing reasons, this Court should grant Medicis' Motion to Dismiss.

Dated:  March 5, 2008                          WEIL, GOTSHAL & MANGES LLP

By: _____
              /s/
                          Matthew D. Powers
                          Attorneys for Defendant
                          Medicis Pharmaceutical Corp.