1    MATTHEW D. POWERS (Bar No. 104795)
     matthew.powers@weil.com
2    WEIL, GOTSHAL & MANGES LLP
     201 Redwood Shores Parkway
3    Redwood Shores, CA  94065
     Telephone: (650) 802-3000
4    Facsimile: (650) 802-3100

5    ELIZABETH STOTLAND WEISWASSER
     (New York Bar No. EW-0736 – *Pro Hac Vice*)
6    elizabeth.weiswasser@weil.com
     JENNIFER H. WU
7    (New York Bar No. JW-1201 – *Pro Hac Vice*)
     jennifer.wu@weil.com
8    WEIL, GOTSHAL & MANGES LLP
     767 Fifth Avenue
9    New York, NY  10153
     Telephone: (212) 310-8000
10   Facsimile: (212) 310-8007

11   Attorneys for Defendant
     MEDICIS PHARMACEUTICAL CORP.

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16   IMPAX LABORATORIES, INC.,                    Case No. C08-00253 MMC

17              Plaintiff,                        **REPLY IN FURTHER SUPPORT OF**
                                                  **MEDICIS' MOTION TO DISMISS**
18        v.
                                                  Date: April 11, 2008
19   MEDICIS PHARMACEUTICAL CORP.,                Time: 9:00 a.m.
                                                  Ctrm: #7, 19th Floor
20              Defendant.
                                                  The Honorable Maxine M. Chesney
21

22

23

24

25

26

27

28

REPLY IN FURTHER SUPPORT OF
MEDICIS' MOTION TO DISMISS                     1

1    IMPAX's opposition brief spends almost all of its ink on arguments that ignore the

2    most fundamental issue for Medicis' motion to dismiss: whether Medicis has caused IMPAX

3    injury-in-fact sufficient to confer constitutional standing.  That is because IMPAX cannot show

4    the required injury here.  In the end, IMPAX's opposition brief is reduced to arguing that Medicis'

5    marking of its product (which almost all companies do), general statements to the investor

6    community of an intent to enforce its patents (again, which most companies do), and refusal to

7    agree not to forever waive its rights (which all companies do) are sufficient to confer

8    constitutional standing.  No case has ever so held, and for good reason.  Under IMPAX's theory,

9    declaratory judgment jurisdiction would be virtually unlimited, and the courts would be flooded

10   with requests for advisory opinions based on hypothetical facts.  The law is otherwise.

11   **I.    This Court Should Dismiss IMPAX's Complaint Because IMPAX Has Not Met its
        Burden of Showing Declaratory Judgment Jurisdiction**

12   **A.    IMPAX Cannot Show Jurisdictional Injury-in-Fact Caused by Medicis**

13   "The core component of standing is an essential and unchanging part of the case-

14   or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

15   (1992).  This "irreducible constitutional minimum of standing requires *injury-in-fact* which is

16   concrete and particularized that is fairly *traceable to the challenged action of the defendant*, and

17   not the result of the independent action of some third party not before the court."  Id. (emphasis

18   added).  Without the allegation of an "*injury-in-fact caused by the defendant* that can be redressed

19   by the court," there is no Article III controversy.  Teva Pharm. USA, Inc. v. Novartis Pharm.

20   Corp., 482 F.3d 1330, 1340 (Fed. Cir. 2007) (emphasis added).  Thus, the Federal Circuit has

21   held that "declaratory judgment jurisdiction generally will not arise merely on the basis that a

22   party learns of the existence of a patent owned by another or perceives such a patent to pose a risk

23   of infringement, *without some affirmative act by the patentee*."  SanDisk Corp. v.

24   STMicroelectronics, Inc., 480 F.3d, 1372, 1380-81 (Fed. Cir. 2007) (emphasis added).  Since

25   MedImmune, the Federal Circuit has consistently required such an "affirmative act" as a predicate

26   to recognizing declaratory judgment jurisdiction, as discussed infra at 5-6.  See, e.g., Micron

27   Tech, Inc. v. MOSAID Techs, Inc., No. 2007-1080, 2008 WL 540182, at *3 (Fed. Cir. Feb. 29,

28

1   2008); <u>SanDisk</u>, 480 F.3d at 1382; <u>Teva</u>, 482 F.3d at 1343.

2          Here, IMPAX's complaint can be dismissed based on its failure to establish the

3   required injury-in-fact that is fairly traceable to Medicis' use of its patent.  Medicis has not

4   threatened IMPAX with its patent, has not made any statements indicating an intent to sue

5   IMPAX on its patent, and has not previously sued any entity on its patent.  IMPAX does not deny

6   that it lacks FDA approval to sell its generic copy of Solodyn®, that absent such approval

7   IMPAX is not allowed to sell its product, that Medicis has not and cannot obtain any stay on FDA

8   approval, and that there is nothing that Medicis has done or can do with respect to its patent rights

9   that can impact whether FDA approves IMPAX's ANDA.

10          IMPAX's only assertion of "injury" is an unsupported statement in its opposition

11   brief that "its concrete economic interest in its ANDA application is impacted by Medicis'

12   accusation of patent infringement" and that Medicis has placed "into actual dispute the soundness

13   of [IMPAX's] ANDA and [its] ability to secure approval of the ANDA."  IMPAX Br. at 11.

14   IMPAX provides no support for this assertion and it should be rejected for two reasons.  First, as

15   discussed further below, Medicis has never accused IMPAX of infringement and IMPAX

16   identifies no such accusation.  Not one of the public statements cited by IMPAX even mentions

17   IMPAX.  Second, and more fundamentally, even if there were an "accusation of patent

18   infringement" by Medicis towards IMPAX (there is none), it could have no impact on whether

19   FDA will or will not approve IMPAX's ANDA.  That is entirely up to the FDA based on whether

20   IMPAX has met the scientific and regulatory requirements; whatever Medicis has or has not said

21   about enforcement of its patent is irrelevant.

22          Accordingly, contrary to IMPAX's assertion, resolution of this lawsuit would not

23   guarantee or even expedite FDA approval; it would be irrelevant to the FDA's determination as to

24   whether approval is appropriate.  <u>See</u> <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 41-42

25   (1976) ("The 'case or controversy' limitation of Article III . . . requires that a federal court act only

26   to redress injury that fairly can be traced to the challenged action of the defendant, and not injury

27   that results from the individual action of some third party not before the court.").  Further, as

28   discussed in our opening brief, Medicis cannot obtain a 30-month stay on FDA's approval of

1  IMPAX's ANDA, providing another reason why there is no injury to IMPAX caused by Medicis.[1]

2  Medicis Br. at 6-7.  IMPAX's opposition brief thus now makes clear that Medicis has caused no

3  cognizable constitutional injury to IMPAX, and this case should be dismissed on that basis alone.

4  **B.    The "Totality of Circumstances" Cannot Show a Justiciable Controversy**

5  Even if IMPAX had made a sufficient showing of constitutional injury (which it

6  has not), IMPAX still lacks jurisdiction to sustain its declaratory judgment complaint because

7  there is no justiciable controversy as required by MedImmune v. Genentech Inc., 127 S. Ct. 764

8  (2007).  As discussed in our opening brief, IMPAX's submission of an ANDA cannot

9  automatically create declaratory judgment jurisdiction; more is required.  Medicis Br. at 6.  The

10  other allegations in IMPAX's opposition brief fail as a matter of law to create a justiciable

11  controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory

12  judgment," as MedImmune requires.  IMPAX's opposition brief confirms that there has been no

13  action by Medicis that is specifically directed at IMPAX, no statement made by Medicis to or

14  about IMPAX that suggests an intent to sue IMPAX for patent infringement, and no prior

15  litigation by Medicis on its patent.  In sum, IMPAX identifies no "affirmative act" of aggression

16  by Medicis that is specifically targeted at IMPAX.  See SanDisk, 480 F.3d at 1380-81.

17  Instead, the "totality of circumstances" identified by IMPAX is no more than

18  Medicis marking its product with its patent, making general statements to the investor community

19  that it will protect its product and enforce its patent without any reference to IMPAX, and the

20  absence of a promise not to sue IMPAX.  Upholding jurisdiction on such facts would open up the

21  floodgates to an endless stream of declaratory judgment complaints and place patentees in the

22  untenable position of being dragged into court to defend the validity of their patents by doing no

---

[1] IMPAX's effort to rely on its alleged "reasonable apprehension of suit" to satisfy the injury requirement should be rejected.  The application of that test to determine declaratory judgment jurisdiction was rejected by the Supreme Court in MedImmune.  See, e.g., SanDisk, 480 F.3d at 1380.  And to the extent that IMPAX seeks to conflate this standard with the required showing of injury, that argument should also be rejected.  See IMPAX Br. at 10.  As discussed, the constitutional injury requirement is a separate and dispositive requirement that mandates a showing that IMPAX has suffered actual harm as a result of Medicis' conduct.  There is no such showing here.  Moreover, there can be no "reasonable apprehension of suit" in any event because Medicis has never accused IMPAX of infringement or even mentioned IMPAX in any of the public statements cited by IMPAX.

1    more than marking and generally indicating an intent to protect its rights.  Finding jurisdiction in

2    these circumstances would allow the declaratory judgment plaintiff to bring suit whenever it

3    wishes and regardless of whether it has suffered harm at the hands of the patentee.  Whatever the

4    boundaries of declaratory judgment jurisdiction after MedImmune, they cannot be so expansive.[2]

5    See Medicis Br. at 8.

6            IMPAX identifies no case that upholds a declaratory judgment claim on the basis

7    of such flimsy and non-specific facts.  Nor could it, because there is no precedent for such a

8    holding.  The Federal Circuit's post-MedImmune requirement of an "affirmative act" by the

9    patentee that is specifically directed at the declaratory judgment plaintiff (see SanDisk, 480 F.3d

10   at 1380-81) has been consistently applied in each of the post-MedImmune Federal Circuit cases

11   on which IMPAX relies.  There is no such "affirmative act" here.  In Teva v. Novartis, the

12   patentee engaged in the affirmative act of suing Teva on certain patents, which resulted in a 30-

13   month-stay on FDA approval of Teva's ANDA.  482 F.3d at 1343.  IMPAX incompletely quotes

14   from Teva as holding that the "threat of litigation is a present injury creating a justiciable

15   controversy."  IMPAX Br. at 10.  IMPAX omits the critical portion of the Court's statement,

16   which makes clear that the Federal Circuit was not referring to a generalized threat of litigation,

17   but rather a specific threat based on Novartis' prior suit against Teva that prevented Teva from

18   entering the market.  The complete quote reads: "*In light of Novartis' pending suit on the same*

19   *ANDA*, this threat of litigation is a present injury creating a justiciable controversy."  Teva, 482

20   F.3d at 1341 (emphasis added).

21           Similarly, in Micron Tech, Inc. v. MOSAID Techs, Inc., the patentee engaged in

22   the affirmative acts of pursuing a "systematic licensing and litigation strategy," enforcing its

23   patents against the three other major DRAM manufacturers over a period of four years, and

24   sending three warning letters directly to the declaratory judgment plaintiff.  No. 2007-1080, 2008

25

26   [2] IMPAX's opposition brief relies on materials that are not pled in IMPAX's complaint.  As
     discussed in our opening brief, this motion to dismiss represents a facial attack on the allegations
27   in IMPAX's complaint. Medicis Br. at 5-6 n.1.  Even assuming that IMPAX's extra-complaint
     material is properly before the Court for purposes of determining whether IMPAX has properly
28   pled jurisdiction (which Medicis does not concede), it is not sufficient to establish declaratory
     judgment jurisdiction.

1    WL 540182, at *3.  And in <u>SanDisk</u>, the patentee directly accused the declaratory judgment

2    plaintiff SanDisk of infringement by providing it with a detailed element-by-element

3    infringement analyses that totaled over 300 pages in length, and further demanded a royalty from

4    SanDisk for such infringement.  <u>SanDisk</u>, 480 F.3d at 1382.  Unlike here, each of these cases

5    involved affirmative and specific acts of aggression by the patentee directed to the declaratory

6    judgment plaintiff.  This case is in striking contrast and there is no support for upholding

7    jurisdiction here, where there is no affirmative act of aggression by Medicis directed at IMPAX.[3]

8              **C.       IMPAX's Declaratory Judgment Action Is Counter to the Policies of the
                       Hatch-Waxman Act**

9

10             Upholding jurisdiction here would not only run counter to the policies of the

     Declaratory Judgment Act, it would be inconsistent with the policies of the Hatch-Waxman Act.

11

     As discussed in our opening brief, the typical Hatch-Waxman provisions do not apply to

12

     IMPAX's ANDA filing.  Medicis Br. at 3-4.  In the usual scenario the patent holder would have

13

     an exclusive 45-day period in which to determine whether and where to sue, and only after

14

     expiration of that period would the generic have a right to bring an action for a declaratory

15

     judgment.  35 U.S.C. § 271(e)(5); IMPAX Br. at 7 n.8.  Here, in contrast, while IMPAX is

16

     entitled to save time and money by free-riding on Medicis' data and obtaining approval based on

17

     an "abbreviated" application, IMPAX is not required to provide notice to Medicis of its ANDA

18

     with a paragraph IV certification under section 21 U.S.C. § 355(j)(2)(A).  Medicis is accordingly

19

     denied the exclusive 45-day period in which to determine whether and where to sue and to obtain

20

     the typical automatic 30-month stay on FDA approval.  <u>Id.</u> at 3, 7.

21

              In these circumstances, where there is no paragraph IV certification and no

22

     exclusive 45-day period for the patent holder to sue, the Hatch-Waxman Act provides no basis for

23

     IMPAX to seek declaratory relief under 35 U.S.C. § 271(e)(5).  Yet IMPAX tries to have it both

24

     _____

25   [3] IMPAX's citations to <u>Kos Pharms., Inc. v. Barr Labs., Inc.</u>, 242 F. Supp. 2d 311 (S.D.N.Y.
     2003) and <u>Teva Pharms. USA, Inc. v. Abbott Labs.</u>, 301 F .Supp. 2d 819 (N.D. Ill. 2004)

26   (IMPAX Br. at 7-8, 11), are similarly inapposite as both also involved specific affirmative
     conduct by the patent holder.  In <u>Kos</u>, the patentee filed two previous actions against Barr for

27   infringement of "not just similar, but nearly identical" patents.  242 F. Supp. 2d at 315.  In
     <u>Abbott</u>, the patentee previously commenced proceedings in Canada against Teva based on the

28   same generic product, and had a history of enforcing its rights against Teva.  301 F. Supp. 2d at
     822.

1   ways.  On the one hand, in an apparent effort create a fictional jurisdictional hook, IMPAX's

2   opposition brief repeatedly seeks to analogize the instant framework to the typical ANDA

3   situation.  See, e.g., IMPAX Br. at 2 (IMPAX's "ANDA procedure was created by the Hatch-

4   Waxman Act"); 4 n.4 (IMPAX's Offer of Confidential Access is "modeled on statutory provisions

5   applicable to other types of ANDAs"); 7 n. 8 (citing 35 U.S.C. § 271(e)(5) as permitting generic

6   to file declaratory judgment action if patent holder does not sue within 45 days of receiving

7   paragraph IV certification).  At the same time, IMPAX exploits the governing framework by

8   seeking to justify its premature filing of this declaratory judgment action despite the absence of

9   harm from a statutory stay.  IMPAX's arguments fail as a matter of law.  While IMPAX accuses

10  Medicis of seeking to impose "an asymmetric rule" (IMPAX Br. at 6), it is indeed IMPAX that is

11  unfairly seeking an asymmetric application of the Hatch-Waxman Act.

12          IMPAX also disingenuously asserts that it gave Medicis an opportunity to consider

13  a covenant not to sue and accuses Medicis of making a "calculated decision to delay bringing

14  suit."  IMPAX Br. at 1.  The facts are directly to the contrary.  As explained in our opening brief,

15  Medicis first learned of IMPAX's ANDA submission in January 2008, when Medicis first

16  reviewed the notification letter from IMPAX.  IMPAX's letter was received during the holiday

17  and Medicis requested two weeks to provide a substantive response.  Medicis Br. at 4.  Rather

18  than provide Medicis with that courtesy, IMPAX jumped the gun and filed this lawsuit.

19          For these reasons the Court should dismiss this action for lack of jurisdiction.

20  II.     **In Any Event, This Court Should Exercise its Discretion to Decline Declaratory
            Judgment Jurisdiction**

21

            For the reasons discussed above and in our opening brief (Medicis Br. at 9-10),

22  even if this Court were to conclude that IMPAX had made the required showing of actual injury

23  and an actual controversy (which it has not), numerous "equitable, prudential, and policy"

24  considerations weigh strongly in favor of this Court exercising its "unique and substantial"

25  discretion to decline to exercise jurisdiction over IMPAX's complaint.  See MedImmune, 127 S.

26  Ct. at 776-77.  IMPAX does not have regulatory approval to commercially market its product and

27  Medicis cannot use its patent to stop or slow FDA approval.  IMPAX is seeking an advisory

28

1    opinion based on IMPAX's hypothetical injury based on hypothetical FDA approval.  The cases

2    cited in our opening brief show that district courts consistently decline to exercise declaratory

3    judgment jurisdiction in these circumstances.  Medicis Br. at 10 (citing cases).  IMPAX fails to

4    address these cases at all in its opposition brief.  IMPAX Br. at 11-13.

5               Instead, IMPAX conclusorily asserts that the public interest would be served by

6    adjudicating this action because it will "increase competition in the drug industry."  Id. at 12.

7    This is wrong.  Contrary to IMPAX's assertion, a judgment by this court will not speed the FDA

8    review or approval process and thus cannot enable IMPAX to sell its generic product any sooner.

9    Indeed, as discussed above, allowing IMPAX to proceed in this way would frustrate the

10    framework of the Hatch-Waxman Act, which sets up a scheme in which courts may consider a

11    declaratory judgment claim by a generic only *after* expiration of the 45-day exclusive period in

12    which the patent holder can determine whether and where to sue.  See 35 U.S.C. § 271(e)(5).

13    Rather than respect this scheme here, and provide Medicis with a meaningful opportunity to

14    respond to IMPAX's letter as Medicis requested, IMPAX filed this preemptive strike.  Rewarding

15    this conduct would run counter to the carefully developed framework of the Hatch-Waxman Act

16    by permitting IMPAX to rely on Medicis' safety and effectiveness data for Solodyn®, developed

17    by Medicis at great time and expense, while racing to the courthouse with this preemptive and

18    premature attack on Medicis' patent rights.

19               Allowing IMPAX to proceed in these circumstances would also frustrate the

20    policies of the Declaratory Judgment Act by providing an advisory opinion based on a

21    hypothetical approval where Medicis has engaged in no affirmative act with its patent against

22    IMPAX as the cases since MedImmune have required.  Allowing a declaratory judgment action to

23    go forward based on no more than the marking of a product, general statements to the investor

24    community, and the absence of a covenant not to sue is without legal support and counter to the

25    policies underlying the Act.  In such a scenario, declaratory judgment jurisdiction would become

26    virtually automatic and the courts would be flooded with unlimited requests for advisory opinions

27    based on hypothetical facts.

28               For these reasons and those set forth in our opening brief, the Court should

1    exercise its discretion to decline to exercise jurisdiction over IMPAX's complaint.

2                                    **CONCLUSION**

3              For the foregoing reasons, and those set forth in our opening brief, this Court

4    should grant Medicis' Motion to Dismiss.

5

6    Dated:  March 28, 2008                              WEIL, GOTSHAL & MANGES LLP

7                                              By:  _____/s/_____

8                                                        Matthew D. Powers
                                                         Attorneys for Defendant
9                                                    Medicis Pharmaceutical Corp.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28